**SO ORDERED.**

**SIGNED this 6th day of January, 2015.**





Robert E. Nugent
United States Chief Bankruptcy Judge

PUBLISHED

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| IN RE: ) | |
| JEFFREY KENT GRACY, ) | Case No. 13-11917 |
| ) | Chapter 7 |
| Debtor. ) | |
| _____) | |
| ) | |
| J. MICHAEL MORRIS, Trustee, ) | |
| ) | |
| Plaintiff, ) | |
| vs. ) | Adv. No. 14-5002 |
| ) | |
| ARK VALLEY CREDIT UNION; ) | |
| and JEFFREY KENT GRACY ) | |
| ) | |
| Defendants. ) | |
| _____) | |

## MEMORANDUM OPINION

When Jeffrey Gracy took two home equity loans from Ark Valley Credit Union, he signed mortgages that described the real estate upon which he lives, along with

1

any improvements and fixtures. He intended to grant and Ark Valley intended to take liens in his land as well as his residence, a manufactured home. Neither he nor Ark Valley took measures to eliminate the certificate of title on his manufactured home, allowing it to remain personal property that is subject to the Uniform Commercial Code and, specifically, Article 9. An Article 9 security interest only attaches when, among other things, the security agreement reasonably identifies the collateral.

In this case, the trustee seeks to avoid an alleged unperfected lien in a manufactured home by virtue of a mortgage that describes the lender's security as both the debtor's real property and any "fixtures" upon the property. Mortgages can be "security agreements" if they satisfy the three requirements of KAN. STAT. ANN. § 84-9-203 (2013 Supp.), but when the transaction is a "consumer transaction" that involves "consumer goods," § 84-9-108(e)(2) renders a generic collateral description by UCC type insufficient as a matter of law.

As discussed below, Gracy's home equity lines of credit from Ark Valley Credit Union were consumer transactions and the manufactured home—his residence—is a consumer good. The liens that Ark Valley sought never attached to the manufactured home leaving the trustee nothing to avoid.[1]

Findings of Fact

In the mid-1990's debtor Jeff Gracy bought the land commonly described as

---

[1] The trustee J. Michael Morris appeared in person. Ark Valley Credit Union appeared by its counsel Eric Bruce. The debtor Jeffrey Gracy appeared as a witness at trial, but is in default of answering the complaint and the trustee obtained a default judgment against Gracy. Adv. Dkt. 20 (Ex. 10).

**2**

617 W. Avenue G in Caldwell, Kansas and moved a new 1994 Fuqua manufactured home that he had purchased from his father-in-law onto the property. Mr. Gracy and his wife lived there; she has since passed, but he continued to live there. He paid off the manufactured home's purchase money loan in 2007, leaving it free and clear of liens at the time of the subsequent transactions with Ark Valley that are the subject of this proceeding.[2] While the title to the home was never transferred to Mr. Gracy of record, he located the certificate of title among papers in his home after this case was filed. Neither party offered it in evidence. Kansas law permits manufactured homeowners or lienholders to "eliminate" certificates of title, thus changing the character of the manufactured home from personal property to an improvement to the real estate.[3] That was not done in this case.

In January of 2009, Mr. Gracy borrowed $21,000 from Ark Valley Credit Union on a home equity line of credit to refinance what he described as personal bills or expenses.[4] The line of credit was secured by a 15-year Revolving Credit Mortgage granted on the Caldwell property. It provides:

> TO SECURE to Lender:
> (1) The repayment of all indebtedness due and to become due under the terms and conditions of the . . . Credit Agreement . . .
> (2) The payment of all other sums advanced . . . to protect the security of this Mortgage . . .
> (3) The performance of Borrower's covenants and agreements of Borrower herein contained;
>
> BORROWER does hereby mortgage, grant and convey to Lender the

---

[2] The purchase money lender, Green Tree Financial Corp., never released the lien of record, *see* Exhibit 5.
[3] *See* KAN. STAT. ANN. § 58-4214 (2005).
[4] The credit agreement – a LOANLINER Home Equity Plan Credit Agreement and Truth-in-Lending Disclosures – referenced in the mortgage instrument was not offered into evidence at trial.

**3**

following described property located in the County of Sumner, State of Kansas:

Lots 32, 34, 36, and 38, Block 85, New Caldwell Addition, City of Caldwell, Sumner County, Kansas which has the address of 617 W. Ave. G, Caldwell, Kansas 67022 (herein "Property Address");

TOGETHER with *all the improvements* now or hereafter erected on the property, *and all* easements, rights, appurtenances and *fixtures*, all of which shall be deemed to be and remain a part of the property covered by this Mortgage; . . . .[5]

No reference was made in the mortgage to the manufactured home located on the property.

A year later, on January 19, 2010 Mr. Gracy obtained a second line of credit from Ark Valley in the amount of $26,000 and executed another Revolving Credit Mortgage on an identical form to secure repayment of the indebtedness. He used this money to build a detached garage on the property.[6] The 2010 mortgage had a 20-year term but the collateral description was identical to that on the 2009 Revolving Credit Mortgage as were the granting and habendum clauses. The 2010 mortgage also made no reference to a manufactured home being located on the realty.

Mr. Gracy thinks that the Ark Valley lending officer knew the described property was his "home," but testified that there was no discussion of it being a manufactured home. When he executed the mortgages, he believed that he had granted a lien on his land, the manufactured home, and the detached garage. Mr. Gracy did not recall any specific discussion with Ark Valley about the mortgage form

---

[5] Ex. B, emphasis added.
[6] Ex. E.

4

or its meaning.

Mary Gillette is the retired manager for Ark Valley. She dealt with Mr. Gracy on these credit transactions. She testified that credit union employees received training on documenting mobile home loans. In particular, the credit union's policy was that manufactured homes offered as security for a home equity loan were required to be set on a permanent foundation and the home's certificate of title was to be eliminated.[7] She did not elaborate on what makes a foundation "permanent." Ms. Gillette knew there was a "house" on the property and that Gracy lived there, but she did not know that Gracy's home was a manufactured home.

The credit union didn't obtain an appraisal of the property to support either loan, but it did rely on the 2008 Sumner County real estate tax valuation in making the 2009 loan.[8] According to Ms. Gillette, the credit union could loan up to 70% of the property's appraised value - $75,410. Before it made the second loan in 2010, Ark Valley obtained a title insurance commitment from abstractor Security 1st Title to make sure no other liens were placed against the real estate.[9] Neither the tax valuation nor the title insurance certificate reference a manufactured home or any other improvement on the real estate.[10] Ms. Gillette also testified that Ark Valley

---

[7] Ms. Gillette was referring to Kansas law that requires elimination of a manufactured home's certificate of title to change the character of a home permanently affixed to the land from personal property to an improvement to real property. *See* KAN. STAT. ANN. § 58-4214(a) (2005). Subsection (b) sets forth the process and requirements of an application to eliminate title.
[8] Ex. G.
[9] Ex. H.
[10] A 2013 two-page printout from the online Sumner County Information System regarding this parcel shows the property's use is that of a "single family residence (detached)." The second page of the printout shows the structure as a "detached SFR [single family residence] unit" and the architectural style is identified as "Mod/MH [modular/manufactured home]" with a crawl space as the basement. *See* Ex. 6. There is no evidence, however, that Ark Valley ever referred to Sumner County's online

5

employees were trained to take a mortgage "on everything." With respect to Mr. Gracy's loans, she intended to obtain a lien on the property as a whole, including the home.

Neither party offered any photographic evidence of how the manufactured home was set on the ground, leaving me only Mr. Gracy's testimony on that topic. On direct examination, he testified that the home was set on "concrete slabs" spaced every 2-3 feet running the length of the home. On cross-examination, Mr. Gracy expanded on this description, testifying that the home is set on cement block piers running the length of the home. Mr. Gracy's description is consistent with the existence of concrete footings as opposed to a solid concrete foundation under the home. It is likely that the piers are set on the concrete slab footings. The home remains on its chassis and is anchored to the surface with what Mr. Gracy called metal straps. These straps are stanchions that tie down and provide support for the home. The manufactured home is skirted with brick, but there is no evidence to suggest that it is load-bearing. Utility service is connected to the home from underneath the home. At some point, Mr. Gracy added a concrete patio and steps to the back side of the mobile home and the detached garage was built on the property in 2010. The front porch and steps were constructed of wood. At trial, neither party elicited whether the manufactured home could be removed intact from the real estate.

Gracy filed this chapter 7 bankruptcy on July 25, 2013. He claimed the property exempt as his homestead.[11] On the date of his petition, the combined balance

---

Information System at the time of making the loans to Gracy.
[11] The Court observes that Gracy did not separately schedule the manufactured home as personal

**6**

of the home equity loans was $43,426.[12] Gracy continues to make monthly principal and interest payments of $347 on the Ark Valley debt.

The trustee filed this adversary proceeding to avoid Ark Valley's alleged lien in the manufactured home as unperfected under 11 U.S.C. § 544(a) because Ark Valley's lien is not indicated on the home's certificate of title as KAN. STAT. ANN. § 58-4204 (2013 Supp.) requires. Ark Valley denies that it took a lien in the home, leaving no lien to be avoided. The Court denied its motion to dismiss for failure to state a claim on this basis.[13]

Conclusions of Law

The trustee invokes his § 544(a) lien creditor avoiding powers, requiring the Court to navigate the intersection of Kansas property law, Kansas's version of Article 9 of the Uniform Commercial Code, and the Kansas Manufactured Housing Act, KAN. STAT. ANN. § 58-4201 *et seq.* (2005 and 2013 Supp.) to determine whether Ark Valley received enforceable security interests on Gracy's manufactured home under the mortgages and whether those security interests were properly perfected. As noted in my ruling on Ark Valley's motion to dismiss, the first issue is one of *attachment*. Only if the credit union's liens attached will I need to assess whether the lien was properly *perfected*.

The trustee says that a lien attached to the manufactured home because the collateral description in the mortgages included the term "fixtures." He further

---
property on Schedule B.
[12] Ex. 8.
[13] Adv. Dkt. 33, 34, and 45 (order).

asserts that the evidence establishes that the manufactured home was a fixture under the common law of fixtures because it was permanently affixed to the real estate.

In the face of its own witness's credible testimony, Ark Valley counters that it did not intend to create a lien on the manufactured home and, therefore, no lien attached. It further contends that the manufactured home is personal property, not a fixture, because the certificate of title was never eliminated as provided under KAN. STAT. ANN. § 58-4214, and the common law of fixtures is inapplicable under the Tenth Circuit Bankruptcy Appellate Panel's decision in *In re Thomas*.[14] Finally, even if the common law of fixtures applies, Ark Valley submits that the trustee has failed to meet its burden of proof that the manufactured home is a fixture encumbered by the mortgages.

### *Development of the Law on Manufactured Home Secured Transactions*

Article 9 of the Uniform Commercial Code, codified in Kansas at KAN. STAT. ANN. § 84-9-101 *et seq.* (2013 Supp.), governs security interests in personal property and fixtures.[15] Secured transactions involving manufactured homes are governed in part by Article 9; such homes are generally personal property though they may become fixtures if they become sufficiently related to real property.[16]

Section 84-9-203 governs the attachment of a security interest to collateral and its enforceability, including a security interest in a manufactured home. Subsection

---

[14] 362 B.R. 478 (10th Cir. BAP 2007).
[15] *See* § 84-9-109(a)(1) (scope); § 84-9-101, Official UCC Comment 1.
[16] § 84-9-102(a)(53) and (54) (defining manufactured homes and manufactured home transactions).

8

(b) requires that value be given, that debtor have rights in the collateral, and that the debtor have authenticated a security agreement that provides a description of the collateral. No particular form of a security agreement is required; instead the agreement must create a security interest as defined in § 84-1-201(b)(35).[17] A mortgage may qualify as an authenticated security agreement.[18] But if the formal requisites of § 84-9-203 are met, the Court must satisfy itself that the parties mutually intended a security interest to attach to the manufactured home, particularly where, as here, Ark Valley, denies such intention.[19]

If the attachment criteria are met, we turn to perfection. In most cases, a security interest is perfected by the filing of a financing statement.[20] Section 84-9-311(a)(2) addresses perfection of a security interest in collateral covered by a state certificate of title statute and generally provides that indicating the security interest on the certificate of title or otherwise complying with the non-uniform statute's other perfection requirements has the effect that filing a financing statement has.[21] In the case of certificate of title property like a manufactured home, filing a financing statement is unnecessary and ineffective to perfect a security interest.[22]

Prior to 1991, the state statute governing perfection of a security interest in manufactured homes or mobile homes was found in the motor vehicle statutes,

---

[17] § 84-9-102(a)(73) (defining a "security agreement"); § 84-1-201(b)(35) (defining "security interest" as an interest in personal property or fixtures which secures payment or performance of an obligation).
[18] *See In re Brooks*, 452 B.R. 809, 813 (Bankr. D. Kan. 2011).
[19] Adv. Dkt. 45, n. 10 at p. 6.
[20] § 84-9-310(a).
[21] Section 84-9-109(c)(2) provides that Article 9 does not apply to the extent another statute of this state expressly governs the creation, perfection, priority or enforcement of a security interest.
[22] § 84-9-310(b)(3).

9

specifically KAN. STAT. ANN. § 8-135(c), because a manufactured home was defined as a vehicle.[23] In 1991, Kansas enacted the Manufactured Housing Act (KMHA), KAN. STAT. ANN. § 58-4201 *et seq*. Section 58-4204 is now the certificate of title statute governing manufactured homes. The method of perfection, however, remained generally unchanged – notation of the lien on the certificate of title.[24] For KMHA purposes, a manufactured home is deemed to be *personal property* and § 58-4204 is the exclusive means of perfecting a security interest in one.[25]

Section 58-4204(i) of the KMHA addresses perfection of non-purchase money security interests in a manufactured home after the original certificate of title has been issued and applies to the Ark Valley transactions. That section provides, in part:

> (i)  When a person acquires a security agreement on a manufactured home or mobile home subsequent to the issuance of the original title on such manufactured home or mobile home, such person *shall require the holder of the certificate of title to surrender the same and sign an application for a mortgage title* in such form as prescribed by the director. *Upon such surrender, the person shall immediately deliver the certificate of title, application and a fee of $10 to the division.* Upon receipt thereof *the division shall issue a new certificate of title, showing the liens or encumbrances so created,* but not more than two liens or encumbrances may be shown upon a title. *The delivery of the certificate of title, application and fee to the division shall perfect such person's security interest in the manufactured home or mobile home described in the certificate of title, as referenced in K.S.A. 84-9-311*, and amendments thereto.[26]

In 2002, the legislature amended the KMHA to add § 58-4214. This statute provided a mechanism to convert the legal character of a manufactured home from

---

[23] *See Beneficial Finance Co. of Kansas, Inc. v. Schroeder,* 12 Kan. App. 2d 150, 737 P.2d 52 (1987), *rev. denied* 241 Kan. 838 (1987).
[24] *See* § 58-4204(i) (2013 Supp.) governing a party who acquires a non-purchase money security interest in a manufactured home after issuance of the original certificate of title on the manufactured home.
[25] *See* § 58-4204(a); *In re Jackson*, 358 B.R. 412, 416 (Bankr. D. Kan. 2007).
[26] § 58-4204(i) (2013 Supp.), emphasis added.

**10**

personal property to "an improvement to real property" *for all purposes.*[27] There are two requirements to effect this change: (1) the home must be affixed to a permanent foundation; *and* (2) the certificate of title must be eliminated pursuant to § 58-4214(b). In short, the KMHA provides that a manufactured home is personal property unless the certificate of title is eliminated. It remains subject to the provisions of Article 9, and for purposes of perfection, the certificate of title statute, § 58-4204 until the title is eliminated. If the requirements of § 58-4214 are satisfied, the manufactured home is treated as real property to which the lien of valid real estate mortgage covering the real property attaches.

There is no question in this case that even if Ark Valley's liens attached to the manufactured home, they are not perfected. The certificate of title has not been eliminated, the manufactured home remains personal property, and Ark Valley's liens needed to be indicated on the certificate of title to be properly perfected. The critical inquiry here is whether the mortgages sufficed to create security interests that attached to the manufactured home at all.

*Attachment*

The trustee argues that the mortgages create security interests in the manufactured home because, notwithstanding the lack of a general or specific

---

[27] The legislative history to HB 2723 (adding § 58-4214 to the KMHA) reflects that the purpose for enacting an elimination of certificate of title provision was to enable title insurance to be obtained on manufactured homes placed on permanent foundations. Without the elimination of the mobile home title, title insurers viewed the home as personal property and would not insure the transfer of ownership of manufactured or mobile homes. Kansas's elimination statute was modeled after similar statutes in Colorado and Washington. *See* Minutes of the Senate Committee on Financial Institutions and Insurance dated March 26, 2002, Hearing on HB 2723 on March 20, 2002 (with attachments and written testimony); Kansas Summary of Legislation, 2002 Reg. Sess. H.B. 2723 (elimination of certificates of title on manufactured homes makes them eligible for title insurance).

**11**

reference to the manufactured home in the mortgages, the habendum clause refers to "fixtures." Thus, the trustee reasons, if the evidence shows that the manufactured home is a fixture, it is sufficiently described so that Article 9 security interests attached to it by virtue of the mortgages.

### *Section 84-9-203 governs the requirements for attachment and enforcement of a security interest in collateral.*

A security interest attaches and becomes enforceable upon the satisfaction of three conditions: (1) value has been given; (2) the debtor has rights in the collateral; and (3) the debtor has authenticated a security agreement that provides a description of the collateral. The first two conditions are easily met. Ark Valley gave value to the debtor in the form of loan proceeds. The debtor has rights in the manufactured home as, at a minimum, the equitable owner. As for the third requirement, the mortgages granted by Gracy to Ark Valley qualify as authenticated security agreements because they "mortgage, grant and convey" an interest in the real property legally described, together with improvements and fixtures that "secure" the repayment of the indebtedness under the home equity credit agreements.

But, two questions remain. First, did Gracy and Ark Valley mutually intend to grant a security interest in the manufactured home located on the real property? And, second, does the use of the term "fixtures" sufficiently describe the otherwise unidentified collateral -- the manufactured home?

As to the first question, because Ark Valley denies that it took a security interest in the manufactured home, we look beyond the technical requirements of §

**12**

84-9-203(b) to determine whether the parties intended to create a security interest in the manufactured home.[28] Mr. Gracy unequivocally testified that Ark Valley knew his "home" was located on the land and in executing the mortgages he believed he was granting a lien on his land, the manufactured home, and the detached garage. The Ark Valley witness largely corroborated Mr. Gracy's testimony. Ms. Gillette knew that Gracy lived in a "house" on the described realty but didn't know that it was a manufactured home. Gracy and Gillette had no discussion that the "home" or "house" on the property was a manufactured home. She had been trained to obtain mortgages "on everything" to secure loans and acknowledged that her intent was to obtain a mortgage on the property as a whole. All of the evidence suggests that the parties mutually intended to grant a security interest in the manufactured home.[29]

### *The security agreement must describe the collateral in which a security interest is granted.*

The sufficiency of the description of the collateral in a security agreement is governed by § 84-9-108 which requires that the collateral be reasonably identified. The purpose of the collateral description is evidentiary, and the test of sufficiency is "that the description do the job assigned to it: Make possible the identification of the collateral described."[30] While supergeneric descriptions in security agreements are prohibited under subsection (c), § 84-9-108(b) generally authorizes describing

---

[28] Adv. Dkt. 45, n.10 at p. 6.
[29] Based upon Ms. Gillette's testimony, she recognized that if the collateral was a manufactured home, special requirements were necessary for Ark Valley to be properly perfected by the recorded mortgage. But the inquiry here is not whether Ms. Gillette intended to perfect a security interest in the manufactured home; the inquiry is whether she, on behalf of Ark Valley, intended to obtain a lien on Mr. Gracy's home.
[30] *See* Official UCC Comment 2, § 84-9-108.

**13**

collateral by category or type such as goods, inventory, equipment, accounts, etc.[31] The UCC recognizes several categories or types of collateral. Most relevant here, "goods" are broadly defined in § 84-9-102(a)(44) as all things that are movable at the time a security interest attaches; "goods" specifically subsumes "fixtures" and "manufactured homes." "Fixtures" are also a UCC-defined type of collateral.[32] Likewise, "consumer goods" defined in § 84-9-102(a)(23), are "goods" that are used primarily for personal, family, or household purposes.[33] Because Gracy uses his manufactured home as his residence, it is a "consumer good" and the transactions it secures are "consumer transactions."

> *A more specific description of collateral is required in a consumer transaction involving consumer goods.*

Consumer goods are an exception to the general rule permitting description by collateral type. Subsection (e)(2) of § 84-9-108 renders descriptions of consumer goods by collateral type insufficient in consumer transactions; a more specific description is required.[34] Gracy's home equity loans from Ark Valley are consumer transactions involving consumer goods. Section 84-9-102(a)(26) defines a consumer transaction as "a transaction in which (i) an individual incurs an obligation primarily for personal, family, or household purposes, (ii) a security interest secures the obligation, and (iii) the collateral is held or acquired primarily for personal, family, or household

---

[31] § 84-9-108(b); *See* § 84-9-102, Official UCC Comments 3 and 4.
[32] § 84-9-102(a)(41).
[33] Revised Article 9 retained the four mutually exclusive "types" of goods: inventory, equipment, farm products and consumer goods. *See* § 84-9-102, Official UCC Comment 4.
[34] *In re Cunningham,* 489 B.R. 602 (Bankr. D. Kan. 2013) (recognizing rule that property type descriptions of collateral are not sufficient for consumer goods; a collateral description of "goods purchased on Account" or "goods purchased with Card" was insufficient to allow attachment and enforceability of a security interest in the goods purchased).

**14**

purposes. "Consumer-goods transactions" are subsumed under "consumer transactions."[35]

Gracy testified that he used the proceeds of the 2009 home equity loan to pay unspecified personal expenses. He used the proceeds of the 2010 home equity loan to construct a detached garage on the property. These obligations were incurred for primarily personal, family, or household purposes. Gracy lives in the manufactured home–another personal, family, or household use. Therefore, the home equity loans are consumer transactions as defined in § 84-9-102(a)(26). The manufactured home is a "good" under § 84-9-102(a)(44) that is also a "consumer good" under § 84-9-102(a)(23). This makes § 84-9-108(e)(2) apply to these lines of credit transactions with Ark Valley. Therefore, the collateral "type" descriptions in the mortgages are insufficient to attach security interests in the manufactured home.[36] Here, the collateral is generically described as a fixture, a UCC-defined collateral type.[37] A specific reference to a "manufactured home" on the real property might have reasonably identified the consumer goods in which a security interest was being granted as § 84-9-108(e)(2) requires. But here, neither of Gracy's mortgages referred to a "manufactured home," whether generically or specifically. The collateral description in the security agreements is insufficient to attach a security interest in

---

[35] Consumer-goods transactions are defined in § 84-9-102(a)(24).
[36] *Cf. In re Pizzano,* 439 B.R. 445, 450-53 (Bankr. W.D. Mich. 2010) (collateral type description of "goods" was sufficient for security interest to attach to debtor's Corvette where the financing transaction between debtor and creditor was a commercial transaction to finance debtor's business and the Corvette was both a "good" and "consumer good").
[37] *Id.* at 452 (calling party's argument that fixtures are not a "type" of collateral defined in the UCC "a dubious proposition"). Section 84-9-102(a)(41) defines fixtures as "*goods* that have become so related to particular real property that an interest in them arises under real property law."

**15**

the manufactured home as a matter of law.[38] Because there is no lien in the manufactured home to avoid, the trustee's § 544(a) complaint necessarily fails.[39] This adversary proceeding should be dismissed.

Conclusion

Because Ark Valley's mortgages insufficiently described Mr. Gracy's manufacture home, the liens that Mr. Gracy sought to grant and Ark Valley tried to obtain never attached, leaving the trustee with nothing to avoid. Judgment shall be entered for Ark Valley accordingly and a judgment on decision will issue this day.[40]

###

---

[38] *Cf. In re Brooks*, 452 B.R. 809, 813 (Bankr. D. Kan. 2011) (granting clause of mortgage described two tracts of real estate and specified that one of the tracts also included a "mobile home").

[39] *See In re Seibold,* 351 B.R. 741 (Bankr. D. Idaho 2006) (The trustee cannot preserve a nonexistent lien; where a security agreement did not exist under applicable state law, there is nothing for the trustee to avoid.); *Rajala v. Buerge (In re Buerge),* 2013 WL 4409698 at *7 (Bankr. D. Kan. Aug. 13, 2013) (Section 544(a) of the Bankruptcy Code empowers the trustee to avoid unperfected but otherwise valid liens that are attached to property of the debtor; a lien that never attaches is not only unperfected, it is invalid and entirely worthless to the estate.)

[40] Having concluded that no lien attached by virtue of the mortgages, we do not reach the question whether the manufactured home was in fact a fixture based upon the evidence presented at trial. Nor is it necessary to consider whether the enactment of § 58-4214 of the KMHA rendered the Kansas common law of fixtures inapplicable to manufactured housing secured transactions as the Tenth Circuit Bankruptcy Appellate Panel concluded in *In re Thomas*, 362 B.R. 478 (10th Cir. BAP 2007).

**16**