**SO ORDERED.**

**SIGNED this 17th day of September, 2015.**





Robert E. Nugent
United States Chief Bankruptcy Judge

_____

DESIGNATED FOR ONLINE PUBLICATION ONLY

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS

IN RE: )
 )
JEFFREY KENT GRACY, ) Case No. 13-11917
 ) Chapter 7
        Debtor. )
_____)
 )
J. MICHAEL MORRIS, Trustee, )
 )
        Plaintiff, )
vs. ) Adv. No. 14-5002
 )
ARK VALLEY CREDIT UNION; )
and JEFFREY KENT GRACY )
 )
        Defendants. )
_____)

### ORDER ON REMAND

On August 25, 2015, the United States District Court, Hon. J. Thomas Marten, reversed this Court's determination that Ark Valley Credit Union's lien did not attach

1

to Jeffrey Gracy's manufactured home and remanded the adversary proceeding for me to determine whether that home was a fixture.[1] If the home was a fixture on the petition date, the lien of Ark Valley's mortgage encumbers it and, if that encumbrance is unperfected as to the manufactured home, the Trustee can avoid and preserve it for the benefit of the bankruptcy estate under 11 U.S.C. §§ 544 and 551.

In my Memorandum Opinion issued on January 6, 2015, I concluded that Ark Valley's mortgage did not attach to the manufactured home because its habendum clause's language did not sufficiently describe the home.[2] KAN. STAT. ANN. § 84-9-108(e) provides that general collateral type descriptors are not adequate to reasonably describe the collateral in consumer transactions and Ark Valley's mortgage only spoke in terms of "fixtures and improvements." Because I held that the mortgage's description was inadequate, I did not reach the issue of whether the manufactured home was a fixture or improvement. The District Court reversed on this point and held that the use of the words "fixtures and improvements" in close proximity to the common address of the real estate and its legal description was reasonably descriptive. The District Court strictly construed the statutory language of KAN. STAT. ANN. § 58-4214(a), the "title elimination" statute of the Kansas Manufactured Housing Act, to hold that complying with it is not the only means of rendering a manufactured home annexed to real estate a fixture or improvement.[3]

---

[1] *J. Michael Morris, Trustee v. Ark Valley Credit Union, et al.,* Case No. 15-1024-JTM (D. Kan. Aug. 25, 2015).
[2] Adv. Dkt. 56.
[3] In its order, the District Court noted that this conclusion is contrary to the Tenth Circuit Bankruptcy Appellate Panel's holding in *In re Thomas*, 362 B.R. 478 (10th Cir. BAP 2007), that KAN. STAT. ANN. § 58-4214 is the sole means of converting a manufactured home to an improvement of

2

The statute does not preclude a determination that a manufactured home is a fixture at common law.[4] On remand, the principal issue before me is whether this particular manufactured home is a fixture. If it is, I must then determine the value of Ark Valley's liens.

Burden of Proof

As plaintiff, the Trustee had the burden to show that Ark Valley had a lien that not been properly perfected at the petition date and would therefore be avoidable by someone wielding the trustee's hypothetical lien creditor powers under §544(a). Rather than fight about perfection, Ark Valley instead argued that it had never taken a lien in the manufactured home because it was not described in the mortgage and not affixed. Thus, part of the Trustee's proof necessarily focused on whether the manufactured home had become a fixture and he had the burden of persuasion on that issue.

Facts

Mr. Gracy testified that he and his late wife purchased the manufactured home sometime after 1994 and placed it on the real estate near Caldwell thereafter. The home was placed on piers that are set on concrete slabs spaced 2-3 feet apart that run length-wise under the home. The home is 50 feet long. The home is anchored to the

---

real property. The District Court disagreed and noted that it is not bound by contrary BAP authority. As the District Court's order is the law of this case, I am required to disregard *Thomas* here.
[4] *See Peoples State Bank of Cherryvale v. Clayton,* 2 Kan. App. 2d 438, 440, 580 P.2d 1375 (1978) (The Uniform Commercial Code's definition of fixtures does not conflict with common law, and application of the common-law test of fixtures, is appropriate.); KAN. STAT. ANN. § 84-9-102(a)(41) (2014 Supp.) (defining "fixtures" as "goods that have become so related to particular real property that an interest in them arises under real property law.").

3

piers and slabs by "metal straps" or "stanchions." He skirted the home with brick, but the skirting is decorative, not structural and bears no weight. The utilities are run through the floor of the structure from underground. He built a wood porch that is attached to the home and the ground. The back door is accessible via concrete steps and a concrete pad.

Ms. Gillette from Ark Valley testified that loan officers at her institution were trained to take a mortgage on manufactured homes that were on a permanent foundation. She stated that they "had to be on a permanent foundation" to make a home equity loan and the "title had to be eliminated so they became real estate."[5] She said she did not know this home was a manufactured home and that Mr. Gracy didn't tell her that in 2009 or 2010 when the loans were made and the mortgages granted. She did know there was a home of some kind there and she testified that she intended to take a security interest in it, severely undercutting Ark Valley's "no lien attached" defense. Mr. Gracy testified that when he gave the mortgages to Ark Valley, he understood that the house and garage were part of the collateral.[6] Mr. Gracy has lived in the manufactured home for 20 years.

The Trustee presented Rick Hopper, a real estate agent familiar with the Caldwell area, to testify about the value of the home and land. Mr. Hopper is a realtor and an auctioneer who auctions 40 to 50 properties a year. He drove by Mr. Gracy's homestead and, based on "experience and gut feel," as well as a review of comparable sales, determined that the value of the property overall was $70,000 with the

---

[5] Adv. Dkt. 68, Tr. at p. 52. *See also* KAN. STAT. ANN. § 58-4214 (2005) (title elimination statute).
[6] Adv. Dkt. 68, Tr. at pp. 19-20.

4

manufactured home contributing $40,000. He later revised the opinion after referring to the NADA guide for used manufactured homes and, based upon that document, he concluded that the manufactured home itself was worth only $21,743. In his second opinion letter, however, he stuck by his view that the land itself is worth $30,000, yielding a total value for the tract and home of $51,743. The property has been appraised for taxes in Sumner County at $69,230. I find that the reasonable retail replacement value of the manufactured home is $21,743.[7]

Analysis

The District Court's remand order requires me to determine whether the manufactured home is a fixture at common law. To demonstrate that an item of personal property has become a common law fixture, a party must show that the item has been annexed to real property, that it has been adapted or appropriated to the use of the real property, and that the annexor intended that it become a fixture.[8] In determining whether the property has been annexed sufficiently to be classified as an improvement to the real estate, Kansas courts look to the degree of permanency of its attachment to the land.[9] "Permanency" in this sense does not require the

---

[7] *See* 11 U.S.C. § 506(a)(2)(In a chapter 7 or 13 case, replacement value of property acquired for personal family or household use is price a retail merchant would charge given the property's age and condition at the time value is determined).
[8] *Stalcup v. Detrich,* 27 Kan. App. 2d 880, 886, 10 P. 3d 3 (2000), citing *U.S.D. No. 464 v. Porter,* 234 Kan. 690, 695, 676 P.2d 84 (1984).
[9] *City of Wichita v. Denton*, 296 Kan. 244, 257-58, 294 P.3d 207 (2013) (billboard structure attached to land by a concrete foundation that had been in place for 20 years was personal property classified as a trade fixture and not compensable in condemnation proceeding).

5

property to be immovable. Rather, whether the chattel is affixed or intended to be affixed is a matter of degree.[10]

Here, the home retains its rail framework and it is plausible that the home could be removed from the ground without significant damage to either. The home is strapped to the piers and slabs, but is not otherwise attached.[11] But courts assess less importance to this factor than they do to the other two and when there is persuasive evidence that the property has been adapted to the land's use and that the annexor intended it to become part of the land, those latter proofs make up for a lesser degree of permanence of the attachment.[12] As the Kansas Supreme Court long ago recognized, the courts have placed less emphasis on the annexation test:

> But attachment to the realty is not alone sufficient to change the character of personal property. It is only one of several tests to determine whether property originally a chattel has become a fixture by being used for a particular purpose, and however the rule may have been formerly it is not now deemed to be the controlling test. Tyler, on page 101 of his treatise on fixtures, says: "The simple criterion of physical annexation is so limited in its range, and so productive of contradiction, that it will not apply with much force, except in respect to fixtures in dwellings." . . . It [fixture] is now determined by the character of the act by which the structure is put into its place, the policy of the law

---

[10] *In re Farmland Industries, Inc.,* 298 B.R. 382, 388-89 (Bankr. W.D. Mo. 2003) (equipment containing a regenerator and reactor vessels installed in oil refinery)

[11] *Stalcup, supra* at 886-87 (metal building that was bolted to a concrete slab was not a fixture; parties intended for the metal building to remain personal property and building was taxed separately from real estate); *Beneficial Finance Co. of Kansas, Inc. v. Schroeder,* 12 Kan. App. 2d 150, 737 P.2d 52 (1987), *rev. denied* 241 Kan. 838 (1987) (in determining that bank that financed purchase of mobile home did not have to make a new fixture filing when mobile home was set on concrete block foundation on real estate, the appellate court noted the ease with which a mobile home could be moved and the enormous burden on a secured creditor to monitor the whereabouts of the mobile home).

[12] Alphonse Squillante, *Law of Fixtures: Common Law and the Uniform Commercial Code -- Part I: Common Law of Fixtures*, 15 HOFSTRA L. REV. 191, 207-208 (1987) (hereafter "Squillante"). *See Atchison, T. & S.F.R.Co. v. Morgan,* 42 Kan. 23, 21 P. 809, 812 (1889) (physical annexation to the realty is not alone sufficient to change character of personal property and is no longer the controlling test).

6

connected with its purpose, and the intention of those concerned. [citation omitted].[13]

Thus the latter factors of adaptation and intent decide this case.

The land at Caldwell is Mr. Gracy's homestead. He placed this manufactured home on that land to inhabit as his homestead and has done so for nearly 20 years. The home contributes considerable value to the homestead property. He surrounded the home with brick skirting, built a porch and a back patio adjacent to it, and erected a large garage just by it. Adding these amenities and living in the home suggest Mr. Gracy's efforts to adapt it to the use of the land as his homestead.[14] The home provides Mr. Gracy a place to live on his homestead. Mr. Hopper, the realtor retained by the Trustee to value the home, testified that the home contributed about $21,734 in value to the land, but he also testified that the home and the land, sold together, could bring as much as $70,000. This also supports a conclusion that the home has been successfully adapted to the use of the realty.[15]

Turning to Gracy's intent to make his manufactured home a permanent part of the realty, I am required to determine his intent *at the time of annexation.*[16] The title elimination statute had not been enacted at the time that Gracy annexed his manufactured home to the realty in the mid-1990's and I can draw no inference from his or the Credit Union's not eliminating title then or later. But, it is clear to me that

---

[13] *Atchison, T. & S.F.R.Co. v. Morgan,* 21 Pac. at 811-12.
[14] *Farmland Industries, Inc.,* 298 B.R. at 389 (adaptation to the use of the realty is shown by evidence that the land was used for a particular purpose and the property in question was used to further that purpose).
[15] *Atchison, T. & S.F.R. Co.,* 42 Kan. 23, 21 P. 809, 812 (1889) (If a structure is placed on the realty to improve it and make it more valuable, that is evidence that it is a fixture.).
[16] *In re Equalization Appeals of Total Petroleum, Inc.,* 28 Kan. App. 2d 295, 301, 16 P.3d 981 (2000).

7

Mr. Gracy intended to make the property as a whole his homestead when he moved the manufactured home onto the realty and subsequently made further improvements to it while he continuously lived there over the next 20 years. Ark Valley presented no evidence to the contrary. Gracy's improvements, along with his grant of several mortgages on the land and its improvements also demonstrate his intention that the home remain affixed and become part of the realty. Mr. Gracy said he considered it his permanent home.[17] He stated he intended to encumber it along with his homestead real estate. Even if he hadn't, courts generally infer that a mortgagor intends personal property to be a fixture when he grants a mortgage in land to which personal property has been annexed.[18] Certainly both he and Ms. Gillette intended the lien of the mortgage to attach to the home. Given both Mr. Gracy's and Ms. Gillette's testimony, it is easy to conclude that both the mortgagor and mortgagee here treated the home as part of the real estate.

All three factors having been shown, I conclude that this home is a fixture or improvement to the Caldwell land and, given the law of this case as determined by the District Court, is subject to Ark Valley's mortgages even though its title was never eliminated.

Whether or not KAN. STAT. ANN. § 58-4214 determines the manufactured home's status as a fixture for purposes of attachment of Ark Valley's mortgages, the statute does affect whether Ark Valley properly perfected its security interests in the

---

[17] Adv. Dkt. 68, Tr. at p. 28.
[18] *Stalcup*, 27 Kan. App. 2d 880, 886 (acknowledging general rule that a building is normally considered to be part of real estate and that the burden of showing otherwise is upon the party claiming the building is personal property); Squillante, *supra* p. 228.

8

home by merely recording its mortgages. The statute makes clear that, for the purposes of the KMHA,[19] a manufactured home only becomes real estate that is encumbered by a mortgage on the real estate where it is set when the home's title is eliminated.[20] Because the title hadn't been eliminated at the date of Gracy's petition, a security interest in the home could only have been perfected under KAN. STAT. ANN. § 58-4204(i) by placing Ark Valley's liens on the home's certificate of title. Both the Trustee and Ark Valley agree that this never occurred. Accordingly, the Trustee can use his hypothetical lien creditor powers under §544(b) to avoid and preserve the unperfected security interest.

Judgment should be entered on remand for the Trustee and against Ark Valley Credit Union avoiding the liens of the Ark Valley mortgages as unperfected and preserving them for the estate, said liens having a value of not more than $21,734, the value of the manufactured home. A final judgment will issue this day.

### 

---

[19] Kansas Manufactured Housing Act, KAN. STAT. ANN. § 58-4201 *et seq.* (2005 and 2014 Supp.).
[20] KAN. STAT. ANN. § 58-4214(a). *See also* § 58-4204(a) which provides that for purposes of titling and perfecting a security interest, a manufactured home is deemed to be personal property.